UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

EVEDENE E. LEECH,                )
                                 )
            Plaintiff             )
                                 )
v.                               )   No. 2:16-cv-00487-GZS
                                 )
NANCY A. BERRYHILL,              )
Acting Commissioner of Social Security,[1]  )
                                 )
            Defendant             )

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of returning to her past relevant work. The plaintiff seeks remand on the bases that the ALJ erred in (i) failing to find severe impairments of depression and post-traumatic stress disorder ("PTSD")/anxiety, (ii) relying on vocational expert ("VE") testimony that mischaracterized the nature of her past relevant work, and (iii) ignoring or improperly assessing the opinions of treating sources Kendra Cornwall, D.O., Barbara Johnson, L.C.S.W., and Jessica Bell, D.O. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 3-18. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2014, Finding 1, Record at 19; that, through her date last insured, she had a severe impairment of degenerative disc disease, Finding 3, *id*.; that, through her date last insured, she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could stand/walk for four out of eight hours in a normal workday, sit for six out of eight hours in a normal workday, occasionally climb ramps, ladders, ropes, scaffolds, and stairs, and occasionally balance, crouch, stoop, kneel, and crawl, Finding 5, *id*. at 22; that, through her date last insured, she was capable of performing past relevant work as an office worker, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 26; and that she, therefore, had not been disabled from July 23, 2011, her alleged onset date of disability, through June 30, 2014, her date last insured, Finding 7, *id*. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure To Find Severe Mental Impairment

The ALJ found that the plaintiff's medically determinable affective and anxiety disorders did not cause more than minimal limitation in her ability to perform basic mental work activities for a consecutive 12-month period and, hence, were nonsevere. *See* Record at 20.

He acknowledged that she had an episode of depression and suicidal ideation commencing in December 2013 that led to a four-week partial mental hospitalization, following which she

received medication management and counseling treatment through June 2015 from Community Counseling Services, except for a two-month period when she was on a trip. *See id*. However, he noted that, by February 2014, the plaintiff's mood had stabilized sufficiently that she no longer was suicidal; by April 2014, she reported an improvement in her depression with the use of Risperdal and Effexor; by July 2014 she was noted to have a normal mood; on August 26, 2014, she was noted to be over her major depressive episode with the assistance of counseling and medication; in September 2014, she continued to deny depression; and, although she had a slight worsening of depression following a physical injury in November 2014, her mental condition overall had improved. *See id*. He, therefore, concluded that her acute episode of depression and anxiety had not lasted the requisite 12 consecutive months to be considered severe, imposing only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation. *See id*. at 20-21.

With respect to opinion evidence, the ALJ gave some weight to an August 30, 2013, opinion of Dr. Bell, who noted, in relevant part, that the plaintiff could perform mental activities such as understanding and memory, sustained concentration, social interaction, and adaptation, and little weight to a February 28, 2014, opinion of agency nonexamining consultant John J. Warren, Ed.D., that there was insufficient evidence to assess mental severity and prospective duration. *See id*. at 25, 95, 513. The ALJ explained that, while Dr. Warren's opinion was "consistent with the paucity of medical evidence prior to February 2014[,] additional evidence was submitted after the reconsideration review that allows a determination on [the plaintiff's] mental health issues." *Id*. at 25.

The plaintiff contends that the ALJ, as a layperson, was unqualified to interpret the raw medical evidence submitted after Dr. Warren's review to arrive at the conclusion that her

4

diagnosed mental impairments were nonsevere – that is, imposed no more than a minimal limitation on her ability to perform basic work activities. *See* Statement of Errors at 3-4 (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)). She further notes that, in *Greene v. Barnhart*, No. 03-36-B-W, 2003 WL 22961199 (D. Me. Dec. 15, 2003) (rec. dec., *aff'd* Jan. 9, 2004), this court held that at an impairment need not remain at a particular level of severity for 12 months to meet the durational requirement. *See id*. at 4; *see also Greene*, 2003 WL 22961199, at *4 ("A condition need not be severe or symptomatic day in and day out for twelve straight months to meet the durational requirement.").

She contends that the Step 2 error is not harmless because, had the ALJ obtained the assistance of a medical expert, he would have been required to account for the impact of her mental impairments in his RFC assessment, and "[t]he most commonly found limitations resulting from these severe impairments are a restriction to unskilled work and at least moderate limitations in concentration, persistence, and pace." Statement of Errors at 6-7. She asserts that, had she been deemed limited to unskilled work, and had the ALJ correctly classified her past relevant work as skilled (the subject of a separate point of error addressed below), she would have been found unable to perform her past relevant work. *See id*. at 7. She adds that, even had the ALJ properly found her mental impairments nonsevere, he should have factored resulting limitations into her RFC. *See id*. at 7-8 (citing *McDonald*, 795 F.2d at 1126).

As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 5-6, this court has rejected the notion that it is *per se* error for an ALJ to determine that an impairment is nonsevere in the absence of expert medical assistance, *see Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856, at *7-*8 (D. Me. Feb. 27, 2015) (ALJ did not err in determining, without benefit of expert assistance, that

claimant's arm/hand impairment was nonsevere when caselaw relied on by claimant, including *Nguyen*, pertained to RFC assessments at Step 4 and ALJ identified substantial evidence in support of his determination that the arm/hand impairment was nonsevere).

Here, as in *Small*, the ALJ identified substantial evidence supporting his conclusion, including:

1. The opinion of the plaintiff's treating physician, Dr. Bell, that as of August 30, 2013, the plaintiff was "able to perform mental activities, such as understanding and memory, sustained concentration, social interaction and adaptation[,]" *id.* at 25, 513;

2. Progress notes indicating that, while the plaintiff suffered acute symptoms in December 2013 and January 2014 leading to her partial hospitalization, her mental condition improved with medication and counseling as of her date last insured, June 30, 2014, and continued to improve thereafter, *see id*. at 20; and

3. Activities of daily living and findings on mental status examinations consistent with a mild level of mental impairment; for example, that the plaintiff could cook, swim for exercise, read, watch television, do puzzles, attend movies, travel, play games on her phone or computer, was noted to be well-groomed or neatly dressed on multiple occasions, had lunch monthly and/or weekly with friends, attended church regularly, had developed a system for managing her medications, and was noted to be alert and oriented and to have a normal attention span, concentration, and memory, *see id*. at 20-21.

As the commissioner argues, *see* Opposition at 6-7, *Greene* is distinguishable. In *Greene*, this court observed that an ALJ had "misperceived the nature of the twelve-month durational requirement as applied to impairments that wax and wane in intensity." *Greene*, 2003 WL 22961199, at *4. It held:

> A condition need not be "severe" or symptomatic day in and day out for twelve straight months to meet the durational requirement. Rather, as the Supreme Court recently observed in *Barnhart v. Walton*, 122 S. Ct. 1265, 1270 (2002), a claimant must show both that his or her impairment has lasted (or is expected to last) for twelve months and, ultimately (for purposes of being found disabled and hence entitled to benefits), that it is severe enough to prevent him or her from engaging in substantial gainful activity for at least twelve months.

*Id*.

In this case, as the commissioner points out, *see* Opposition at 6, the ALJ did not find the plaintiff's mental symptoms to be intermittent but, rather, of limited duration with improvement over time.

In any event, as the commissioner argues in the alternative, *see id.* at 6-7, even if the ALJ erred in deeming the plaintiff's mental impairments nonsevere, the plaintiff fails to show reversible error. She relies on speculation that a mental health expert likely would have assessed what she contends, without citation to authority, are "[t]he most commonly found limitations resulting from these severe impairments": "a restriction to unskilled work and at least moderate limitations in concentration, persistence, and pace." Statement of Errors at 7. As the commissioner asserts, *see* Opposition at 7, that showing falls short of warranting remand, *see, e.g., Jones v. Astrue*, No. 1:10-cv-179-JAW, 2011 WL 1253891, at *6 (D. Me. Mar. 30, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("The plaintiff faults the administrative law judge for failing to factor in fatigue from diabetes mellitus, a condition that he deemed nonsevere. Nonetheless, she fails either to identify any record support for a finding that her diabetes caused fatigue or explain how such a finding would have made a material difference at Step 5.") (citation omitted).

For the same reason, the plaintiff demonstrates no reversible error in the ALJ's failure to include limitations resulting from her mental impairments if properly found nonsevere. *See* Statement of Errors at 7-8. As the commissioner argues, *see* Opposition at 7-8, *McDonald* requires

only that all of a claimant's medically determinable impairments, including those that are nonsevere, be considered in assessing functional restrictions at Step 4, not that functional restrictions necessarily be found to result from nonsevere impairments, *see McDonald*, 795 F.2d at 1127 (affirming district court's order invalidating commissioner's policy "of not considering the combined effects of non-severe impairments"). As noted above, the plaintiff points only to functional restrictions that she asserts are "commonly found[.]" Statement of Errors at 7.

The plaintiff fails to demonstrate entitlement to remand on the basis of the asserted error at Step 2.

### B. Failure To Characterize Past Relevant Work Correctly

The plaintiff next argues that the ALJ erred in relying on the testimony of a VE at hearing that her past relevant work for her ex-husband's trucking business was that of an office worker, an unskilled position, when that work should have been characterized as a composite of the skilled job of dispatcher and the semi-skilled job of payroll clerk. *See* Statement of Errors at 8-12; Record at 26, 40-41.

However, as the commissioner observes, *see* Opposition at 17, the success of this point of error hinges on the merit of the plaintiff's argument that the ALJ erred in failing to assess restrictions flowing from her mental impairments. The plaintiff contends that, had the ALJ properly characterized her past relevant work as skilled and semi-skilled *and* included mental restrictions in his RFC, he would have found her unable to return to her past relevant work. *See* Statement of Errors at 10. She contends that, at Step 5, she would have been deemed disabled pursuant to section 202.06 of the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, *see id*. at 8, 12-13, which provide a "streamlined" method by which the commissioner can meet her burden of showing that there is other work a

8

claimant can perform, *Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991) (citation and internal quotation marks omitted).

For the reasons discussed above, however, the plaintiff fails to show reversible error in the omission of any mental restrictions from her RFC. As the plaintiff points out, *see* Statement of Errors at 7, her past relevant work was characterized at the reconsideration level as skilled (including the job of dispatcher), *see* Record at 100. Yet, on reconsideration, the commissioner deemed her capable of returning to that past relevant work based on a physical RFC opinion of Marcia Lipski, M.D., *see id*. at 98-100, which the ALJ at the hearing stage accorded great weight, *see id*. at 25-26.

Remand, accordingly, is unwarranted on the basis of this point of error.[3]

### C. Treatment of Treating Sources

The plaintiff finally faults the ALJ for ignoring the mental health treatment records of treating psychiatrist Dr. Cornwall and L.C.S.W. Johnson and giving only some weight to the opinion of treating physician Dr. Bell. *See* Statement of Errors at 13-18.

She asserts that the ALJ ignored records of Dr. Cornwall and L.C.S.W. Johnson, *see id*. at 15-16, including (i) a May 22, 2014, notation that her PTSD and depression were unstable but with

---

[3] During rebuttal at oral argument, the plaintiff's counsel noted that the ALJ had not adopted a sit-stand option assessed by Dr. Lipski, arguing that there was no indication whether the addition of that limitation would have precluded her client's past relevant work if properly characterized by the VE. The plaintiff waived this point, which I understand to be a separate ground for remand, by failing to mention it in her statement of errors. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006). In any event, even if the point were not waived, it would be unavailing for two independent reasons. First, on reconsideration, the agency deemed the plaintiff able to perform past relevant skilled work as a dispatcher based on the Lipski opinion, assumedly including the need for a sit-stand option. *See* Record at 99-100. Second, the plaintiff, who was represented by counsel at hearing, did not avail herself of an opportunity to question the VE regarding the impact of a sit-stand option on her past relevant work as she contends it should have been characterized. *See* Record at 41-45. In the circumstances, she cannot rely on an absence of evidence regarding the point as a basis for remand. *See, e.g., Clark v. Astrue,* No. 2:11-cv-373-DBH, 2012 WL 2913700, at *5 (D. Me. June 28, 2012) (rec. dec., *aff'd* July 17, 2012) ("[T]he vocational expert was not asked for the basis of his expert opinion on this point. It was incumbent upon counsel for the plaintiff, if he intended to rely on the absence of such support, to ask the question that would elicit that information.")

9

mild improvement and her OCD [obsessive compulsive disorder] was unstable, *see* Record at 631, (ii) a record of a July 17, 2014, phone call during which she reported morning tremulousness and anxiety with recent dreams about her ex-boyfriend, following which Dr. Cornwall increased her medication dosage, *see id*. at 625, (iii) an August 7, 2014, notation that she reported that her mood had been stable and remained improved from previous months but she continued to experience "initial insomnia[,]" and Dr. Cornwall found her "[a]ffect . . . mildly anxious[,]" *id*. at 625-26, and (iv) an October 9, 2014, notation that she reported that she had continued to gain weight due to her medications and had been feeling more depressed and isolative, and Dr. Cornwall found her "affect . . . mildly anxious [and] blunted" and her "judgment and insight . . . fair to poor[,]" following which Dr. Cornwall adjusted her medications, *id*. at 755-56.

The plaintiff asserts that, "[i]f Dr. Cornwall's assessment were considered and adopted, it would have ruled out [her] past relevant work because she would not have the concentration necessary to complete a normal work day/work week." Statement of Errors at 16.

As the commissioner rejoins, however, *see* Opposition at 10-11, none of the records on which the plaintiff relies indicates that she would have had limitations in concentration. To the contrary, those records reflect findings that she was "fully oriented" with "[n]o difficulties with attention[,]" a "clear and coherent" thought process, and a memory "within normal limits." *Id*. at 626, 631, 756. Indeed, as discussed above, the ALJ characterized records of mental status examinations, including those of Dr. Cornwall and L.C.S.W. Johnson, as noting the plaintiff to be alert and oriented, with a normal attention span, concentration, and memory. *See id*. at 21.

In the absence of the plaintiff's identification of any evidence calling into question the ALJ's failure to assess limitations in concentration, persistence, or pace, remand is unwarranted based on his allegedly deficient handling of the Cornwall and Johnson treatment records. *See, e.g.,*

*Archer v. Colvin*, Civil No. 1:13-cv-00018-NT, 2014 WL 457641, at *4 (D. Me. Feb. 4, 2014) (ALJ's failure to acknowledge records did not require remand when they were not inconsistent with ALJ's findings and claimant did not indicate how the ALJ's recognition of those reports would have changed the outcome of the case).[4]

The plaintiff finally takes issue with the ALJ's handling of Dr. Bell's opinion. In her August 30, 2013, opinion, Dr. Bell stated, in relevant part:

> The severity of [the plaintiff's] pain has left her unable to perform the duties required by her place of employment, such as prolonged standing, sitting or any lifting of objects greater than 25 pounds. In this office, she has received osteopathic manipulative treatment and treatment with prolotherapy injections. Her pain levels have since stabilized, although she is still unable to sustain work-related physical activities, such as sitting, standing, lifting, carrying, or bending.

*Id*. at 513.

The ALJ gave the opinion some weight, limiting the plaintiff to lifting no more than 20 pounds but finding "little support for the [plaintiff's] assertions that she cannot stand or sit for prolonged periods." *Id*. at 25. He explained:

> The record shows the [plaintiff] has intermittent back pain, partially relieved by treatment and medication. She is able to live alone, manage her home and care for her personal hygiene. She has not required surgery and is not entirely credible about the level of her pain.

*Id*.

The plaintiff complains that the ALJ gave no specific reason why her pain allegations were not entirely credible. *See* Statement of Errors at 18. She points out that she had testified that she is unable to vacuum, do dishes, or "any of that type of movement[,]" pays someone to clean her

---

[4] As the commissioner acknowledges, *see* Opposition at 11 n.8, the plaintiff goes on to state that "[e]ven a moderate limitation in concentration, persistence, pace, *or in social functioning* would not allow for [her] past relevant work of dispatcher[,]" Statement of Errors at 16 (emphasis added). I agree with the commissioner that, to the extent that the plaintiff means to press any point regarding the omission of social functioning limitations, her argument is too undeveloped to warrant consideration. *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

house because she is physically unable to do so, has given up all of her previous activities, including bowling and skiing, and has tried different treatment modalities to alleviate her pain, including epidurals. *See* Statement of Errors at 18 (quoting Record at 47). That begs the question of whether her testimony was supportably found less than credible, however.

As the commissioner argues, *see* Opposition at 12-15, in explaining his handling of the Bell opinion, the ALJ alluded to a detailed discussion of credibility earlier in his decision in which he stated, in relevant part:

> [The plaintiff's] complaints of back pain are episodic. However, at all times, her neurological examinations have been normal and she has walked with a normal gait. There is little evidence to support her allegations of her legs giving out. Even when she had an exacerbation of back pain, she was able to do pool therapy. Moreover, Dr. Bell's treatment of the [plaintiff] presumes spinal stenosis. However, the actual MRI reports do not confirm the diagnosis of lumber spinal stenosis. In February 2014, [the plaintiff] was well enough to go away for 1-2 months to spend time with close family and friends. In July 2014, she was planning to go to Texas to visit a man she met online. The trip did not happen but the [plaintiff] appeared ready and able to travel. She spends time with her grandchildren, sometimes going to their games and picking them up from school. She was on another trip in November 2014, when she fell at the airport. She lives alone and manages to care for her personal needs and cook for herself.

Record at 24-25 (citations omitted).

The credibility determination by the ALJ, who observed the claimant, evaluated her demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

The plaintiff does not acknowledge the ALJ's detailed explanation for his credibility finding, let alone challenge it. *See* Statement of Errors at 17-18. Beyond that, as the commissioner notes, *see* Opposition at 14-15, the plaintiff does not address the fact that the ALJ's rejection of limitations on prolonged sitting or standing is supported by substantial evidence in the form of the

opinion of Dr. Lipski, who had the benefit of review of Dr. Bell's opinion as well as her treatment notes, *see* Record at 95, 97-99.

The plaintiff fails to demonstrate entitlement to remand on the basis of this point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge